UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHILIP SUHR, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| | § | Civil Action No. 4:18-cv-0259 |
| Plaintiff, | § § | |
| | § | JURY TRIAL DEMAND |
| v. | § § | |
| CIVEO CORPORATION, RICHARD A. NAVARRE, C. RONALD BLANKENSHIP, BRADLEY J. DODSON, MARTIN A. LAMBERT, CONSTANCE B. MOORE, CHARLES SZALKOWSKI, and TIMOTHY O. WALL, | § § § § § § § | |
| Defendants. | § § | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Philip Suhr ("Plaintiff"), by and through his undersigned counsel, alleges upon personal knowledge with respect to themselves, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action is brought as a class action by Plaintiff on behalf of himself and on behalf of all other similarly situated public common stockholders of Civeo Corporation ("Civeo" or the "Company") against the Company, Richard A. Navarre, C. Ronald Blankenship, Bradley J. Dodson, Martin A. Lambert, Constance B. Moore, Charles Szalkowski, and Timothy O. Wall, the members of Civeo's board of directors (collectively referred to as the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S,C. §§ 78n(a) and 78t(a), respectively, and United

States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the acquisition of Noralta Lodge Ltd. ("Noralta") by Civeo through a merger transaction as alleged in detail herein (the "Proposed Transaction").

2.     On November 27, 2017, Civeo issued a press release announcing that it had entered into a Share Purchase Agreement (the "Merger Agreement") by and among the Company, Noralta, Torgerson Family Trust ("Torgerson Trust"), and Lance Torgerson.  Pursuant to the Merger Agreement, Civeo will acquire, directly or indirectly, all of the issued and outstanding shares of Noralta.

3.     Pursuant to the terms of the Merger Agreement, the consideration for the Proposed Transaction payable at closing will be in an amount equal to (i) $209,500,000 Canadian dollars (or approximately $168,660,070 US dollars) in cash, subject to customary adjustments for Noralta's working capital, debt, cash, and unpaid transaction expenses at closing, of which $28,500,000 (or approximately $22,944,210 USD) will be held in escrow by Alliance Trust Company (the "Escrow Agent") to support the sellers' indemnification obligations under the Purchase Agreement; (ii) 32,790,868 Common Shares (or approximately $69 million USD, valued at approximately $2.10 per share), of which 13,491,100 shares will be held in escrow by the Escrow Agent and released in three equal installments from escrow upon the satisfaction of certain conditions related to a customer contract remaining in place in June 2021, June 2022, and June 2023; and (iii) 9,679 shares of Class A Series 1 Preferred Shares of Civeo (the "Preferred Shares") with an initial liquidation preference of $96,790,000 (the "Merger Consideration"). The Proposed Transaction is valued at approximately $290 million USD.

4.      As discussed below, the Merger Consideration appears excessive, and the process by which Defendants agreed to consummate the Proposed Transaction is fundamentally unfair to Plaintiff and Civeo's other public stockholders.

5.      On December 22, 2017, in order to convince Civeo stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement on a Schedule 14A (the "14A") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

6.      In particular, the 14A contains materially incomplete and misleading information concerning: (i) financial projections for the Company, Noralta, and the synergies expected to result from the Proposed Transaction; (ii) the valuation analyses conducted by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard"); and (iii) the background process leading up to the Proposed Transaction.

7.      The special meeting of Civeo stockholders to vote on the Proposed Transaction is forthcoming.  It is imperative that the material information that has been omitted from the 14A is disclosed to the Company's stockholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.

8.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Civeo's stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event that the Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, a stockholder of Civeo common stock.

10.      Defendant Civeo, a corporation incorporated under the laws of the Province of British Columbia, maintains its principal executive offices at 333 Clay Street, Suite 4980, Houston, Texas, 77002.  The Company's common stock trades on the NYSE under the ticker symbol "CVEO".

11.      Defendant Richard A. Navarre ("Navarre") is, and has been since 2014, a director of the Company and currently serves as Chairman of the Board.

12.      Defendant C. Ronald Blankenship ("Blankenship") is, and has been since 2014, a director of the Company.

13.      Defendant Bradley J. Dodson ("Dodson") is, and has been since 2014, a director, President, and the Chief Executive Officer ("CEO") of the Company.

14.      Defendant Martin A. Lambert ("Lambert") is, and has been since 2014, a director of the Company.

15.      Defendant Constance B. Moore ("Moore") is, and has been since 2014, a director of the Company.

16.      Defendant Charles Szalkowski ("Moore") is, and has been since 2014, a director of the Company.

17.      Defendant Timothy O. Wall ("Wall") is, and has been since March 2017, a director of the Company.

18.      The parties in paragraphs 11 through 17 are referred to herein as the "Individual Defendants" and/or the "Board," collectively with Civeo, "Defendants."

**JURISDICTION AND VENUE**

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

20.     This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Civeo is incorporated under the laws of the Province of British Columbia and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

**CLASS ACTION ALLEGATIONS**

22.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Civeo (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.     This action is properly maintainable as a class action because:

a)     the Class is so numerous that joinder of all members is impracticable.  As of November 26, 2017, there were approximately 132.26 million shares of Civeo common stock outstanding, held by hundreds to thousands of

individuals and entities scattered throughout the country.  The actual number of public stockholders of Civeo will be ascertained through discovery;

b)    there are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

    i.    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the 14A in violation of Section 14(a) of the Exchange Act;

    ii.    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    iii.    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading 14A.

c)    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d)    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e)    the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to

individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f)      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g)      a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.      Background of the Company and the Proposed Transaction

24.      Civeo is an integrated provider of workforce accommodations, logistics, and facility management services to the natural resource industry.  The Company's scalable modular facilities provide long-term and temporary accommodations.  Once facilities are deployed in the field, Civeo also provides catering and food services, housekeeping, laundry, facility management, water, and wastewater treatment, power generation, communications, and redeployment logistics.  The Company operates in three principal business segments: Canada, Australia, and U.S.

25.      On November 27, 2017, Civeo issued a joint press release announcing the Proposed Transaction.  The press released, stated in relevant part:

**Civeo to Acquire Noralta Lodge, a Premier Accommodations Provider in the Canadian Oil Sands Region**

*Solidifies Civeo's position as the partner of choice for workforce accommodations across the Canadian oil sands region*

- Transaction strengthens Civeo's workforce accommodations offering with multiple complementary locations and a large percentage of premium private rooms

- Acquisition would be accretive to operating cash flow, increase Civeo's standalone operating cash flow by approximately 75% during the twelve month period ended September 30, 2017 and reduce Civeo's 3Q17 leverage ratio from 4.4x standalone to 3.2x on a pro forma combined basis
- Noralta provides greater revenue visibility through contracts in place with two major investment grade oil sands producers with estimated, aggregate annual revenues of at least C$130 million during their terms
- Noralta generated C$155 million, C$32 million and C$71 million of revenue, net income and EBITDA, respectively, during the twelve month period ended August 31, 2017
- Expected annual synergies of C$10 million by 2019, primarily related to operational and corporate efficiencies
- Civeo management team will be hosting an investor conference call this morning at 8:30am EST; to access the conference call and the accompanying presentation, please see details below

HOUSTON and EDMONTON, Alberta, November 27, 2017 – Civeo Corporation ("Civeo" or the "Company") (NYSE: CVEO), one of the largest global providers of workforce accommodations, logistics and facility management services to the natural resource industry, and Noralta Lodge Ltd. ("Noralta"), a premier, Alberta-based provider of remote accommodations to the Canadian oil sands region, today announced the companies have entered into a definitive agreement for Civeo to acquire Noralta for a total consideration of approximately C$367 million (or US$289 million) on a cash-free, debt-free basis, subject to adjustments.

Bradley J. Dodson, Civeo's President and Chief Executive Officer, stated, "Acquiring Noralta advances our strategy of expanding our core markets and the services we provide to customers who own their own rooms. This deal brings together two leading companies with unique strengths in the Canadian oil sands. It will enhance our catering and facilities management capabilities and will give us greater opportunities to optimize occupancy for our customers across more locations with wider accommodation options. This transaction combines the two companies' operational strengths, facilities and commitment to exceptional service, and strengthens our position as partner of choice for our customers. Importantly, it bolsters our dedication to sustainable economic development supporting the social and cultural identities of the First Nations in that region."

Lance Torgerson, Noralta's Founder and Chairman, said, "I'm excited about what this means for the combined company's ability to provide a quality home away from home for our guests. When we founded Noralta in 1997, we did so seeking to be the first choice for quality accommodations across the region. Today's announcement marks a significant milestone in achieving that goal by joining forces with an industry leader that shares our commitment to providing our guests with comfortable, healthy and safe living options over the full

duration of their stays. The combined company will also be able to implement Civeo's customer-facing technology into Noralta facilities. Underscoring this confidence in the strategy and direction of the combined business, Noralta's shareholders will receive a meaningful amount of equity in Civeo."

Corey Smith, Noralta's President and Chief Executive Officer, noted, "This deal uniquely positions the combined company to deliver customer-facing, full-service lodging solutions through a network of leading First Nation and community partnerships. Sharing a commitment to the oil sands region, Noralta and Civeo bring complementary expertise together, creating an enhanced service offering that will effectively meet the evolving needs of our customer base."

**Strategic Rationale**

- **Strengthens Workforce Solutions Portfolio:** Together, the combined company will better support the success of its customers over the life of their projects, as it provides innovative home-to-home workforce accommodation solutions across the Canadian oil sands region.
- **Accelerates Strategic Priorities:** The acquisition of Noralta furthers Civeo's strategic objectives of servicing operator-owned accommodation facilities and enhancing the quality and scope of our service offerings, including investing in customer-facing technologies, and focusing on disciplined growth opportunities.
- **Generates Significant Operating Cash Flow and Strengthens the Pro Forma Balance Sheet:** In addition to stronger revenue visibility, the combined company would have generated approximately 75% more operating cash flow than Civeo on a standalone basis during the twelve month period ended September 30, 2017 and would reduce Civeo's pro forma leverage, strengthening the Company's balance sheet.
- **Solidifies Operations-Focused Revenue:** Noralta's two largest contracts support operations-focused workforces that service large developed oil sands resources which will have ongoing room needs even beyond the contract terms already in place.
- **Enhances First Nations Relationships:** Noralta's well established First Nations relationships further enhance Civeo's profile as a leader in partnering with First Nations throughout Western Canada for the mutual benefit of those groups and the combined company.

**Transaction Details**

- Under the terms of the agreement, Civeo would acquire 100% of Noralta's equity for approximately C$367 million (or US$289 million), on a cash-free, debt-free basis, subject to adjustment in accordance with the terms of the definitive agreement, comprising approximately:
  - C $210 million (or US $165 million) in cash;

- o 32.8 million Civeo common shares (or US$69 million, valued at $2.10 per share) issued to Noralta's equity holders; and
- o Non-voting convertible preferred equity issued to Noralta's equity holders with a 2.0% dividend rate initially convertible into 29.3 million Civeo common shares.
- The total transaction value noted above of C$367 million (or US$289 million) is based on an estimated fair market value of the consideration given to Noralta's equity holders.
- Civeo expects to fund the cash portion of the purchase price with cash on hand and borrowings under its existing revolving credit facility.
- Noralta's equity holders would have the right to convert the preferred equity after two years from the closing of the transaction at a conversion price of US$3.30 per share, a 64% premium to Civeo's closing price on November 24, 2017. Civeo may cause the conversion of the preferred equity at any time, provided that the volume weighted average price per common share is at least US$3.30. The preferred equity is subject to mandatory conversion into Civeo common shares at the end of the fifth year. Civeo may also elect to redeem any or all of the preferred equity at any time for cash in an amount equal to the liquidation value plus any accrued dividends, initially C$123 million (or US$97 million).
- The issuance of equity in the transaction is subject to Civeo shareholder approval. The transaction is subject to customary closing conditions, including the receipt of all required regulatory approvals pursuant to the Competition Act (Canada) and Investment Canada Act. The transaction is anticipated to close in the second quarter of 2018.
- The registration rights, lock-up and standstill agreement between Noralta's equity holders and Civeo will restrict Noralta's equity holders from selling any Civeo common shares for a period of 18 months from the closing date of the transaction. Further, the agreement requires Civeo to use commercially reasonable efforts to file a shelf registration statement with the SEC, under which Noralta's equity holders will be allowed to sell Civeo common shares following the 18-month lock-up period, limited on a quarterly basis to no more than 10% of the fully diluted (both common and as-converted preferred shares) Civeo common shares issued to Noralta's equity holders in the transaction. Noralta's equity holders also will be subject to customary standstill restrictions and a voting restriction limiting voting rights of common shares held in excess of 15% of the outstanding Civeo common shares.
- Upon closing of the transaction, Noralta's equity holders would be granted the right to nominate one mutually agreed upon director to Civeo's board of directors, expanding the board to eight members.

(EBITDA is a non-GAAP financial measure that is defined as net income plus interest, taxes, depreciation and amortization. Please see the reconciliations to GAAP measures at the end of this news release.)

**Advisor Information**

Lazard Ltd. is serving as Civeo's exclusive financial advisor while Gibson, Dunn & Crutcher LLP and Bennett Jones LLP are serving as legal advisors. Noralta is advised by Sequeira Partners and Dentons Canada LLP and Dentons US LLP are acting as legal advisors.

[***]

**About Civeo Corporation**

Civeo Corporation is a leading provider of workforce accommodations with prominent market positions in the Canadian oil sands and the Australian natural resource regions. Civeo offers comprehensive solutions for housing hundreds or thousands of workers with its long-term and temporary accommodations and provides catering, facility management, water systems and logistics services. Civeo currently owns a total of 19 lodges and villages in operation in Canada and Australia, with an aggregate of more than 23,000 rooms. Civeo is publicly traded under the symbol "CVEO" on the New York Stock Exchange. For more information, please visit Civeo's website at www.Civeo.com.

**About Noralta**

Noralta is a premier, Alberta-based provider of remote accommodations to the Canadian oil sands region. Through its full service open lodge accommodations, facilities management services, and turnkey solutions, Noralta offers unmatched hospitality for tens of thousands of workers in Western Canada's energy sector. With eleven lodges comprised of over 5,700 owned rooms and 7,900 total rooms strategically located throughout Northern Alberta, Noralta has the capacity to house large workforces and the flexibility to meet their clients' rapidly changing needs. Noralta leverages their expertise in planning, building, and managing lodges and their strategic partnerships to act as a valuable partner to their clients. For more information, please visit Noralta's website at www.Noraltalodge.com.[1]

26.     The Merger Consideration undervalues Civeo and is the result of a severely flawed merger process.

27.     It is imperative that Defendants disclose the material information they have omitted from the 14A, discussed in detail below, so that the Company's shareholders can

---

[1]  Civeo Corporation, Current Report (Form 8-K), at Exhibit 99.1 (Press Release dated November 27, 2017, issued by Civeo Corporation) (Nov. 27, 2017).

properly exercise their corporate suffrage rights and make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

## II.     The 14A Is Materially Incomplete and Misleading.

28.     On December 22, 2017, Defendants filed a materially incomplete and misleading 14A with the SEC and disseminated it to Civeo stockholders.  The 14A solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the 14A before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the 14A misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

***Material Omissions Concerning Financial Projections for Civeo, Noralta, and Synergies Expected to Result from the Proposed Transaction***

29.     The 14A discloses financial projections for Civeo and Noralta, which were separately prepared by each company's management (the "Projections").  14A 34-36.  However, the 14A fails to provide material information concerning the Projections, which were relied upon by the Board in recommending that Civeo stockholders vote in favor of the Proposed Transaction.

30.     Failure to provide complete and full disclosure of the line item projections for the metrics used (e.g., EBITDA) to calculate the above-mentioned non-GAAP metrics leaves Civeo stockholders without the necessary, material information to reach a fully informed decision concerning the Company, the fairness of the Merger Consideration, and, ultimately, whether to vote in favor of the Proposed Transaction.

31.     As a result, in order to make the Projections included on pages 34 through 36 of the 14A materially complete and not misleading, Defendants must provide Civeo stockholders with a reconciliation table of the non-GAAP measures to their most comparable GAAP measures or the line items used to calculate the non-GAAP financial measures disclosed in the 14A.

32.     In addition, the 14A states that Lazard reviewed financial forecasts provided by Civeo "relating to the business of Civeo and the projected synergies and other benefits, including the amount and timing thereof, anticipated by the management of Civeo to be realized from the Acquisition."  14A 37.  However, the 14A fails to disclose these projected synergies despite the fact that Lazard utilized the projected synergies in its valuation analyses (e.g., Lazard's *"Has-Gets" Analysis From the Prospective of the Civeo Shareholders*).

33.     The omissions from the above-referenced projections renders the 14A materially incomplete and misleading.  If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known — but it may not choose half-truths.

**Material Omissions Concerning Lazard's Financial Analysis**

34.     With respect to Lazard's *Noralta Discounted Cash Flow Analysis*, the 14A fails to disclose the following key components used in the analysis: (i) Noralta's terminal value; and (ii) the inputs used to derive the discount rates of 10.0% to 12.0%.  *See* 14A 40.

35.     Likewise, with respect to Lazard's *Civeo Discounted Cash Flow Analysis*, the 14A fails to disclose the following key components used in the analysis: (i) Civeo's terminal value; (ii) the inputs and assumptions used to derive the discount rates of 10.0 to 11.5%; and

(iii) the Company's net debt (defined as the book value of Civeo's total debt minus cash and cash equivalents).  *See* 14A 42.

36.     Likewise, with respect to Lazard's *"Has-Gets" Analysis From the Perspective of the Civeo Shareholders* analysis, the 14A fails to disclose the following key components used in the analysis: (i) the inputs and assumptions used to derive the terminal multiples of 5.0x to 6.0x; (ii) the synergy cash flows; (iii) the synergy terminal values; (iv) the inputs and assumptions used to derive the discount rates ranging from 10.0% to 11.5%; and (v) the value of adjustments made for net debt assumed.  *See* 14A 42-43.

37.     These key inputs are material to Civeo common stockholders, and their omission renders the summary of Lazard's *Noralta Discounted Cash Flow Analysis* and *Civeo Discounted Cash Flow Analysis* incomplete and misleading.  As a highly respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…."  *Id.*  As Professor Davidoff explains:

> **There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars**….  This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  **This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion *unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices*.**  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the

"right" answer for fairness.   This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

38.     With respect to Lazard's *Noralta Selected Precedent Transactions Analysis*, the 14A fails disclose the individual multiples calculated for each company evaluated.  The omission of these multiples renders the summary of the analysis and the implied enterprise value range misleading.  A fair summary of the *Noralta Selected Precedent Transactions Analysis* requires the disclosure of the individual multiples for each company; merely providing the range is insufficient, as Civeo stockholders unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the Company's enterprise value.

39.     With respect to the *Other Analyses* section, the 14A fails to disclose the number and identities of the equity analysts and their individual price targets for the Company.  *See* 14A 43.  A fair summary of these analyses requires disclosure of this information.  Merely providing the range of the analysts' price targets renders the illustrative range of price targets per share insufficient, as Civeo stockholders unable to assess whether Lazard utilized credible research analysts or, instead, referenced certain analysts in order to artificially reduce the illustrate range of price targets per share and, as a result, make the Merger Consideration appear more favorable. The omission of the identities of each analyst and their price targets renders the summary of these analyses materially incomplete and misleading.

40.     In sum, the omission of the above-referenced information renders the 14A materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the expiration of the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision

15

regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

44.     The omission of information from a 14A will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

45.     Defendants have issued the 14A with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction.  Each Defendant reviewed and authorized the dissemination of the 14A, which fails to provide critical information regarding,

amongst other things: (i) financial projections for the Company, Noralta, and the synergies expected to result from the Proposed Transaction; (ii) the valuation analyses conducted by the Company's financial advisor, Lazard; and (iii) the background process leading up to the Proposed Transaction.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the 14A, but nonetheless failed to obtain and disclose such information to common unitholders although they could have done so without extraordinary effort.

47.     The Individual Defendants knew or were negligent in not knowing that the 14A is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the 14A states that Lazard reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Lazard, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the 14A,

rendering the sections of the 14A identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Lazard's analyses in connection with their receipt of the fairness opinions, question Lazard as to the derivation of fairness, and be particularly attentive to the procedures followed in preparing the 14A and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the 14A.   The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   The Individual Defendants were negligent in choosing to omit material information from the 14A or failing to notice the material omissions in the 14A upon reviewing it, which they were required to do carefully as the Company's directors.   Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

49.     Civeo is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the 14A.

50.     The misrepresentations and omissions in the 14A are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.   Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Civeo within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Civeo, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the 14A filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the 14A and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The 14A contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

55.     In addition, as the 14A sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The 14A purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the common unitholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the 14A;

C.     Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  January 26, 2018.

Respectfully submitted,


_____*/s/ Thomas E. Bilek*_____
Thomas E. Bilek
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Attorneys for Plaintiff*

**OF COUNSEL:**

Juan E. Monteverde
Miles D. Schreiner
**MONTEVERDE & ASSOCIATES PC**
350 Fifth Avenue, Suite 4405
New York, NY  10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com
        mschreiner@monteverdelaw.com